[No. 2017.]

### J. D. Boyd v. The State.

Practice — Evidence — Case Stated.— In a prosecution for forcibly pre-venting the collection of taxes, the collector testified that when he went into the defendant's place of business to collect delinquent taxes due by him, he told the defendant his business, and the defendant, denouncing the delinquent tax as a fraud, expelled the collector from his place of business by demonstrations and threats of violence. By the witness L. the defense proved that the collector said nothing about taxes when he went into de-fendant's place of business. By the witness A. F. B. he proved that when the collector came into his place of business, he said to defendant: "I sup-pose your brother has told you of the proposition I have made to him," and said nothing about taxes, and that defendant, in reply, cursed and ordered him off. The defense proposed to prove by J. B. that he knew the defend-ant to be angry with the collector for previous ill-conduct, and that the defendant's denunciation of the collector was because of his previous ill-conduct and had no reference whatever to the collection of taxes. This proposed testimony was rejected by the court. Held, that, considered in connection with the testimony of A. F. B., the proposed testimony was com-petent and its exclusion was error.

Appeal from the County Court of Navarro. Tried below before the Hon. J. H. Rice.

The conviction in this case was based upon an information which charged that the appellant, by force and threats of force, prevented one R. A. Wilson, a deputy tax collector of Navarro county, Texas, from collecting certain taxes due by him. The punishment assessed was a fine of $100, and confinement in the county jail for the period of three months.

R. A. Wilson was the first witness for the State. He testified that on the 10th day of March, 1885, he was deputy tax collector of Navarro county. On that day he went to the defendant's place of business to collect from him certain delinquent taxes. Witness at once told the defendant the purpose of his visit, and the defendant replied that the delinquent tax was a d—d fraud, and he would not pay it; that he had consulted attorneys and had been advised that the tax was illegal. Advancing upon the witness with a pair of tongs in one hand and a hammer in the other, the defendant told the witness to get out of his shop d—d quick or he would wipe up his floor with witness. He used the implements in his hands in a threatening manner. Witness, who for years had been almost an invalid, backed out of the door. Defendant followed him, cursing him, calling him a d—d son-of-a-b—h and kindred names, and

finally told witness that, if he did not get off of his premises, he would stamp witness into the ground. Defendant had known witness's physical weakness for at least fifteen years. He only owed a poll tax, which he refused to pay in whole or in part. He told witness that he, witness, was trying to collect the poll tax to put in his pocket, and buy more buggies to ride around in.

Cross-examined, witness stated that one Evan Layman and defendant's brother A. F. Boyd were present in defendant's blacksmith shop when the altercation occurred, and heard all that passed. Defendant's father, J. Boyd, came up after the witness got out of the shop. Witness made no levy on any of the defendant's property. He knew of no property belonging to defendant upon which he could levy. He did not ask any one present to point out any property belonging to defendant on which he could levy. Witness had no time to levy, in view of defendant's conduct. Witness's business at the shop was to collect the tax due by defendant. The State rested.

J. Boyd was the defendant's first witness. He testified that the defendant was his son. Witness was at the defendant's house on March 10, 1885, and from that house saw R. A. Wilson go to defendant's shop. When the witness saw Wilson go to the shop, he went to the shop himself, to prevent a difficulty. On reaching the shop, at which time Wilson was standing outside and defendant in the door, witness told Wilson to leave, and that if his, witness's, son owed him anything witness would see that he was paid. Witness did not hear the defendant curse Wilson, nor did he see defendant attempt to strike Wilson. He did not hear Wilson say anything about taxes. Witness knew of Wilson trying to collect a four-dollar claim against defendant.

Cross-examined, the witness said that the demeanor of the parties indicated that there had been something of a little "fuss" at the shop before witness reached it.

A. F. Boyd, the defendant's brother, testified in his behalf that he was in defendant's shop on March 10, 1885, when R. A. Wilson came there. When Wilson came into the shop he said to defendant: "I guess your brother has told you of the proposition I have made to him?" Defendant in reply told Wilson to get out of his shop, and cursed some. Witness did not hear Wilson say that he had come to collect taxes from the defendant. Defendant did not strike, nor did he attempt to strike, Wilson, nor did he draw a pair of tongs or other instrument on Wilson. Witness was present and saw the whole transaction. Wilson made no levy at the shop.

Evan Layman was the next witness for the defense. He testified

that he was blowing the bellows in defendant's shop when Wilson came there on March 10, 1885. The defendant did not even stop his work at the anvil during the time that Wilson was there. He used the hammer and tongs he had in his hands at his work upon a plow, and made no demonstration of any kind with them as if to strike Wilson. He did not leave his work nor advance upon Wilson. Wilson said nothing to defendant about taxes.

Cross-examined, witness denied that he ever said to Burch, or to Wilson in Burch's presence, that defendant cursed Wilson, called him a son-of-a-b—h, and ordered him out of the shop, because he asked defendant to pay his tax. The witness did not make a similar statement to Mr. Childress on his, Childress's, premises. The defense closed.

D. Burch testified, for the State, in rebuttal, that Evan Layman did make to him, in the presence of R. A. Wilson, the statements which he, Layman, testified that he did not make.

Mr. Childress, in rebuttal, testified, for the State, that Layman did make to him the statement which he denied on the stand. Furthermore, in that same connection, Layman said that what he knew would necessarily be against the defendant; that he did not want to testify against him, and would stay away if defendant would pay him enough. Witness had heard the defendant say, since this prosecution was commenced, that Wilson came to his shop to collect delinquent taxes, and that he gave Wilson a terrible cursing and ordered him to leave.

Cross-examined, witness testified that Layman told him that defendant was mad at Wilson for exposing a pistol near his house, but cursed him about asking for taxes, and not about the pistol episode.

The motion for new trial raised the question discussed in the opinion.

*Harris & Lee*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

HURT, JUDGE. This is a conviction for preventing by force and threats of force the collection of taxes.

It is alleged in the information that defendant did unlawfully by force and threats of force prevent the collection, by R. A. Wilson, a deputy tax collector for Navarro county, of certain taxes due from the said J. D. Boyd to the State, the said Wilson being an officer authorized by law to enforce said collection, as was well known to Boyd.

Wilson states in his testimony that on the 10th day of March, 1885, he went to defendant's place of business to collect from him certain delinquent taxes due from him to the State. He told defendant his business. Defendant replied that this delinquent tax was a d—d fraud, and that he would not pay it; that he had consulted lawyers and they told him that it was not legal. Boyd told Wilson to get out of his shop d—d quick; that if he, Wilson, did not he would wipe up the floor with him,— advancing towards Wilson with a pair of tongs and a hammer in his hands, and flourishing them in a threatening manner. Wilson backed out of the door; Boyd following, cursing and abusing him, telling him that if he did not leave his premises he would stamp him into the ground.

The offense charged is that defendant, by force and threats of force, did prevent the collection of taxes. Is this charge sustained or proved by the above facts? Wilson, the collector, went to appellant's shop for the purpose of collecting his poll tax. Boyd by threats of force drove him from his shop, refusing to pay the tax. Do these facts show that Wilson was prevented from collecting the tax?

Now it is not shown that Wilson went to the shop to make a levy in the event that Boyd refused to pay his tax. Nor is it shown that defendant had any property in the shop out of which the tax could have been collected. If there was no possible means to collect the tax, how was it possible for Boyd to prevent its collection?

Mr. Webster defines " prevent " as follows: " To intercept and stop; to hinder; to obstruct; to impede; to thwart." Do the facts show that the tax would have probably been collected if it had not been for the acts of defendant?

We have deemed proper to throw out these suggestions with a view to another trial, without deciding that the facts of this case as presented in the record do or do not support the verdict of the jury.

It appears from a bill of exceptions duly saved that defendant "offered to prove by one J. Boyd that he knew the defendant herein was mad at said R. A. Wilson on account of the way said Wilson talked to defendant's wife on the day before, and that defendant was mad at said Wilson on said account, and that the reason why said witness hurried on to the shop on said day, that said witness knew defendant was mad at said Wilson for the way he had treated his family, and that defendant was talking to Wilson about the way he talked to his family and not about the collection of the tax." To which evidence the 'State objected, and the court sustained the objection, and defendant excepted.

When considered in connection with the testimony of A. F. Boyd, we think the proposed evidence was admissible. He states that he was at the shop; that when Wilson came he said to defendant, "I guess your brother has told you of the proposition I have made to him." Defendant replied to Wilson to get out of his shop, and cursed him. Wilson did not say he wanted to collect taxes from defendant. . . . Layman also says that Wilson made no mention of taxes.

Now the object of the proposed evidence was to show a reason or motive for defendant's conduct other than that deduced from Wilson's testimony. If defendant's conduct towards Wilson was caused by something which had occurred prior to the occurrence in the shop, and which arose from matter foreign to the collection of his taxes, certainly he had the right to show this to the jury, and let them pass upon this matter along with the evidence of Wilson.

Because of the rejection of this evidence, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Opinion delivered November 25, 1885.]